**[ORAL ARGUMENT NOT YET SCHEDULED]**

**UNITED STATES COURT OF APPEALS**
**for the**
**D.C. CIRCUIT**

| | | |
|---|---|---|
| NICHOLAS FUENTES, | : | |
| | : | |
| *Petitioner,* | : | No. 22-1082 |
| v. | : | |
| | : | |
| U.S. TRANSPORTATION | : | |
| SECURITY ADMINISTRATION; | : | |
| U.S. DEPARTMENT OF | : | |
| HOMELAND SECURITY; | : | |
| UNITED STATES OF AMERICA | : | |
| | : | |
| *Respondents.* | : | July 11, 2022 |

## PETITIONER'S RESPONSE TO RESPONDENTS' MOTION TO DISMISS AND *NUNC PRO TUNC* MOTION TO EXTEND DEADLINE

## PETITIONER'S RESPONSE TO RESPONDENTS' MOTION TO DISMISS

The Petitioner, Nicholas Fuentes, responds to the Respondents'

motion to dismiss this petition for review as untimely and asks the Court to

deny it. He additionally asks the Court to extend the deadline for his

petition for review *nunc pro tunc* and deem it timely filed. While Fuentes's

petition was received and, therefore, deemed filed on May 13, 2022 – three

1

days late, reasonable grounds exist to forgive the lateness because the blame lies with his counsel and he made diligent efforts to cure his counsel's error.

## STATEMENT

1.    On April 27, 2021, Fuentes initiated the Department of Homeland Security's (DHS) administrative review process for airline travelers who are denied boarding at airports because he suspected that he had been placed on a "no-fly" list. He submitted an inquiry to the DHS's Traveler Redress Inquiry Program (TRIP).

2.    Almost a year later on March 11, 2022, Fuentes received a response from the DHA in the form of a final agency order. The order informed Fuentes that the Transportation Security Administration (TSA) placed him on a "Deny Boarding List" on January 12, 2021, for satirical comments that it thought indicated that Fuentes was a potential "threat to civil aviation or national security." *See* Exhibit A. The order further stated that the TSA removed him from the "Deny Boarding List" on November 2, 2021. *See* Exhibit A. DHS and the TSA, however, declined to guarantee that

Fuentes had not been categorically assigned to any other lists like the Secondary Security Screening Selection (SSSS).

3.      Despite allegedly being removed from the "Deny Boarding List," Fuentes still experienced denials of boarding for months after he was allegedly removed from the "Deny Boarding List."

4.      On May 11, 2022, Fuentes transmitted his petition, which was received by this Court, two days later.

## ARGUMENT

49 U.S.C. § 46110(a) requires a party who is subject to a final administrative agency order pertaining to an order issued by the TSA to file a petition for review in this Court or the federal circuit court of appeals for the circuit in which they reside "not later than 60 days after the order is issued." Section 46110(a) permits the Court to allow a petition to be file "after the 60th day only if there are reasonable grounds for not filing by the 60th day."

While the Court has "consistently construed the reasonable grounds exception narrowly," *Matar v. Transportation Security Administration*, 910

F.3d 538, 542 (D.C. Cir. 2018), the Court has found "reasonable grounds only in cases in which the petitioner attributes the delay to more than simply ignorance of the order." *Avia Dynamics, Inc. v. F.A.A.*, 641 F.3d 515, 521 (D.C. Cir. 2011).

Here, Fuentes does not claim simply ignorance of the order, but rather an error on the part of his counsel whom he was reasonably entitled to rely on. Fuentes retained Pattis & Smith, LLC to represent him in all matters pertaining to his placement on the TSA's "Deny Boarding" list. *See* Exhibit B, Affidavit of Cameron L. Atkinson, Esq., ¶ 3. Attorney Norman A. Pattis of Pattis & Smith, LLC, reasonably, but mistakenly, believed that, based on previous federal appellate matters that he had litigated in Washington, D.C., he was admitted to *this* Court's bar, and Mr. Fuentes reasonably relied on Pattis & Smith, LLC's assurance that it would be able to represent him before the Court. *Id*. at ¶¶ 5, 10.

When Mr. Fuentes received DHS's final administrative order on March 11, 2022, Pattis & Smith, LLC, was experiencing significant upheaval among its staff. *Id*. at ¶ 6. In March 2022, it lost an attorney, which

burdened one of the undersigned, Attorney Cameron L. Atkinson. *Id*. at ¶ 6. In March and April 2022, it unexpectedly lost its entire support staff (an office manager and a paralegal), which further burdened Attorneys Atkinson and Pattis. *Id*. at ¶ 6. Due to the additional and unexpected workload, Attorneys Atkinson and Pattis were not able to pursue Mr. Fuentes's administrative appeal until the first week of May 2022. *Id*. at ¶ 7. After preparing the necessary appeal paperwork with Attorney Pattis, Attorney Atkinson, acting at the direction of Attorney Pattis, attempted to use Attorney Pattis's ECF login to file the necessary paperwork. *Id*. at ¶ 7. When he could not login, he contacted the Court's clerk's office and the ECF helpdesk. After several hours of inquiry, he ascertained for the first time that Attorney Pattis had confused his admission to the Federal Circuit Court of Appeals with that of the D.C. Circuit. *Id*. at ¶ 7.

Attorney Atkinson immediately informed Attorney Pattis and began searching for local counsel who would be willing to sponsor *pro hac vice* admissions for him and Attorney Pattis in either the D.C. Circuit or the Seventh Circuit – the circuit responsible for the region in which Mr.

Fuentes lives. *Id*. at ¶ 8. Mr. Atkinson concurrently submitted an application for admission to the Seventh Circuit in hopes that he would be admitted in time to timely file Mr. Fuentes' petition. *Id*. at ¶ 8. Attorney Pattis also joined Attorney Atkinson in searching for local counsel. *Id*. at ¶ 8.

They were unsuccessful in those endeavors, and Attorney Atkinson sought to preserve Mr. Fuentes' right to review by providing him with the necessary appellate documents on May 10, 2022, and instructing him to overnight mail them to the Court's clerk's office, thus filing them *pro se*. *Id*. at ¶ 9. Fuentes complied with Attorney Atkinson's instructions. *Id*. at ¶ 9.

The late filing of Mr. Fuentes' petition is, in no way, fairly attributable to him. He reasonably relied on the assurances of his counsel that they could represent him before the Court, and he had no reason to doubt that. When he was informed that they could not, he still followed his counsel's instructions to take extraordinary steps to preserve his rights to review. His counsel, in turn, fell prey to the frailty of the human memory, and their workload – caused by unexpected and extraordinary changes in

their staff – prevented them from ascertaining their error earlier. *Id*. at ¶ 6. They, however, made prodigious efforts to preserve Mr. Fuentes' rights to review.

The late filing of Mr. Fuentes' petition constitutes excusable neglect on the part of counsel, and the Court should give full consideration to Mr. Fuentes' diligent efforts to attempt to remedy that error. The Court has articulated a strong policy for resolving disputes on their merits, including in determining whether to impute a lawyer's error to his client. *Jackson v. Beech*, 636 F.2d 831, 832 (D.C. Cir. 1980). This case is an appropriate situation in which the Court should adhere to that policy.

Mr. Fuentes has petitioned the Court for review on the grounds that the Respondents have not simply placed him on a "Deny Boarding" list and then taken him off, but rather have assigned him to multiple lists that burden or infringe on his right to interstate travel without telling him or guaranteeing that he will be removed. The reason? An unknown, unnamed federal agent(s) has determined that Mr. Fuentes – speaking satirically and hyperbolically as a journalist on a political matter – uttered speech

constituting a true threat within the meaning of the United States Supreme Court's "true threats" test articulated in *Virgina v. Black*, 538 U.S. 343, 359 (2003). That agent(s) made that determination without hearing from Mr. Fuentes at all as to what his intent or purpose was, and the Respondents continue to burden Mr. Fuentes' right to interstate travel on that basis.

The implications are of enormous national importance. If the Respondents' actions are allowed to stand, the United States can weaponize a national security process to punish and chill political speech protected by the First Amendment. What speech gets punished will depend merely on which political party controls the levers of power. In other words, every conceivable consideration weighs in favor of the Court hearing this case on the merits.

Mr. Fuentes did file his petition for review late through no fault of his own. He made prodigious efforts to attempt to cure an error of counsel. The late filing is excusable. The Court should hear this case on its merits in accordance with its well-established policy.

## CONCLUSION

Mr. Fuentes respectfully asks the Court to deny the Respondents'

motion to dismiss.

/s/ Cameron L. Atkinson /s/
Cameron L. Atkinson, Esq.
Pattis & Smith, LLC
383 Orange Street, 1st Floor
New Haven, CT 06511
Tel: 203-393-3017
Fax: 203-393-9745
catkinson@pattisandsmith.com


/s/ Jay M. Wolman /s/
Jay M. Wolman, Esq.
Randazza Legal Group, PLLC
100 Pearl Street, 14th Floor
Hartford, CT 06103
Tel: 702-420-2001
ecf@randazza.com

## PETITIONER'S *NUNC PRO TUNC* MOTION TO EXTEND DEADLINE

Pursuant to D.C. Cir. L.R. 27(c), the Petitioner, Nicholas Fuentes, hereby moves the Court *nunc pro tunc* to extend the deadline for him to file his petition for review until May 13, 2022 and deem his petition filed on May 13, 2022, timely filed.

Mr. Fuentes's late filing of his petition for review is not fairly attributable to him, but rather constitutes an excusable error on his counsel's part that was due to extraordinary circumstances. Good cause exists for granting this *nunc pro tunc* motion.

## STATEMENT

1.  On April 27, 2021, Fuentes initiated the Department of Homeland Security's (DHS) administrative review process for airline travelers who are denied boarding at airports because he suspected that he had been placed on a "no-fly" list. He submitted an inquiry to the DHS's Traveler Redress Inquiry Program (TRIP).

2.  Almost a year later on March 11, 2022, Mr. Fuentes received a response from the DHA in the form of a final agency order. The order

informed Fuentes that the Transportation Security Administration (TSA) placed him on a "Deny Boarding List" on January 12, 2021, for satirical comments that it thought indicated that Mr. Fuentes was a potential "threat to civil aviation or national security." *See* Exhibit A. The order further stated that the TSA removed him from the "Deny Boarding List" on November 2, 2021. *See* Exhibit A. DHS and the TSA, however, declined to guarantee that Fuentes had not been categorically assigned to any other lists like the Secondary Security Screening Selection (SSSS).

3.       Despite allegedly being removed from the "Deny Boarding List," Mr. Fuentes still experienced denials of boarding for months after he was allegedly removed from the "Deny Boarding List."

4.       On May 11, 2022, Fuentes transmitted his petition, which was received by this Court, two days later.

5.       Due to his reliance on counsel and counsel's subsequent mistake due to extraordinary circumstances, Mr. Fuentes filed his petition *pro se* three days late on May 13, 2022.

6.     Counsel was unable to appear for Mr. Fuentes until June 15, 2022, and his counsel of choice was unable to appear until July 8, 2022.[1]

## **ARGUMENT**

49 U.S.C. § 46110(a) requires a party who is subject to a final administrative agency order pertaining to an order issued by the TSA to file a petition for review in this Court or the federal circuit court of appeals for the circuit in which they reside "not later than 60 days after the order is issued." Section 46110(a) permits the Court to allow a petition to be file "after the 60th day only if there are reasonable grounds for not filing by the 60th day."

While the Court has "consistently construed the reasonable grounds exception narrowly," *Matar v. Transportation Security Administration*, 910 F.3d 538, 542 (D.C. Cir. 2018), the Court has found "reasonable grounds only in cases in which the petitioner attributes the delay to more than

---

[1] Pattis & Smith, LLC is Mr. Fuentes's lead counsel.  Attorney Jay Wolman entered his appearance as a stop-gap measure and sponsored Attorney Atkinson's admission to the bar of this Court.

simply ignorance of the order." *Avia Dynamics, Inc. v. F.A.A.*, 641 F.3d 515, 521 (D.C. Cir. 2011).

Given the strictness of this standard, counsel submits that the same reasons that satisfy the "reasonable grounds" exception satisfy the good cause standard.

Here, Fuentes does not claim simply ignorance of the order, but rather an error on the part of his counsel whom he was reasonably entitled to rely on. Fuentes retained Pattis & Smith, LLC, to represent him in all matters pertaining to his placement on the TSA's "Deny Boarding" list. *See* Exhibit B, Affidavit of Cameron L. Atkinson, Esq., ¶ 3. Attorney Norman A. Pattis of Pattis & Smith, LLC reasonably, albeit mistakenly, believed that, based on previous federal appellate matters that he had litigated in Washington, D.C., he was admitted to the Court's bar, and Mr. Fuentes reasonably relied on Pattis & Smith, LLC's assurance that it would be able to represent him before the Court. *Id*. at ¶¶ 5, 10.

When Mr. Fuentes received DHS's final administrative order on March 11, 2022, Pattis & Smith, LLC was experiencing significant upheaval

among its staff. *Id*. at ¶ 6. In March 2022, it lost an attorney, which

burdened one of the undersigned, Attorney Cameron L. Atkinson. *Id*. at ¶

6. In March and April 2022, it unexpectedly lost its entire support staff (an

office manager and a paralegal), which further burdened Attorneys

Atkinson and Pattis. *Id*. at ¶ 6. Due to the additional and unexpected

workload, Attorneys Atkinson and Pattis were not able to pursue Mr.

Fuentes' administrative appeal until the first week of May 2022. *Id*. at ¶ 7.

After preparing the necessary appeal paperwork for Attorney Pattis,

Attorney Atkinson, at the direction of Attorney Pattis, attempted to use

Attorney Pattis's ECF login to file the necessary paperwork. *Id*. at ¶ 7.

When he could not login, he contacted the Court's clerk's office and the

ECF helpdesk. After several hours of inquiry, he ascertained for the first

time that Attorney Pattis had confused his admission to the Federal Circuit

Court of Appeals with the D.C. Circuit. *Id*. at ¶ 7.

Attorney Atkinson immediately informed Attorney Pattis and began

searching for local counsel who would be willing to sponsor *pro hac vice*

admissions for him and Attorney Pattis in either the D.C. Circuit or the

Seventh Circuit – the circuit responsible for the region in which Mr. Fuentes lives. *Id*. at ¶ 8. Mr. Atkinson concurrently submitted an application for admission to the Seventh Circuit in hopes that he would be admitted in time to file Mr. Fuentes' petition. *Id*. at ¶ 8. Attorney Pattis also joined Attorney Atkinson in searching for local counsel. *Id*. at ¶ 8.

They were unsuccessful in those endeavors, and Attorney Atkinson sought to preserve Mr. Fuentes' right to review by providing him with the necessary appellate documents on May 10, 2022, and instructing him to overnight mail them to the Court's clerk's office, thus filing them *pro se*. *Id*. at ¶ 9. Fuentes complied with Attorney Atkinson's instructions. *Id*. at ¶ 9.

The late filing of Mr. Fuentes' petition is, in no way, fairly attributable to him. He reasonably relied on the assurances of his counsel that they could represent him before the Court, and he had no reason to doubt that. When he was informed that they could not, he still followed his counsel's instructions to take extraordinary steps to preserve his rights to review. His counsel, in turn, fell prey to the frailty of the human memory, and their workload – caused by unexpected and extraordinary changes in

their staff – prevented them from discovering their error earlier. *Id*. at ¶ 6.

They, however, made prodigious efforts to preserve Mr. Fuentes' rights to

review.

The late filing of Mr. Fuentes' petition constitutes excusable neglect

on the part of counsel, and the Court should give full consideration to Mr.

Fuentes' diligent efforts to attempt to remedy that error. The Court has

articulated a strong policy for resolving disputes on their merits, including

in determining whether to impute a lawyer's error to his client. *Jackson v.*

*Beech*, 636 F.2d 831, 832 (D.C. Cir. 1980). This case is an appropriate

situation in which the Court should adhere to that policy.

Mr. Fuentes has petitioned the Court for review on the grounds that

the Respondents have not simply placed him on a "Deny Boarding" list

and then taken him off, but rather have assigned him to multiple lists that

burden or infringe on his right to interstate travel without telling him or

guaranteeing that he will be removed. The reason? An unknown, unnamed

federal agent(s) has determined that Mr. Fuentes – speaking satirically and

hyperbolically as a journalist on a political matter – uttered speech

constituting a true threat within the meaning of the United States Supreme Court's "true threats" test articulated in *Virgina v. Black*, 538 U.S. 343, 359 (2003). That agent(s) made that determination without hearing from Mr. Fuentes at all as to what his intent or purpose was, and the Respondents continue to burden Mr. Fuentes' right to interstate travel on that basis.

The implications are of enormous national importance. If the Respondents' actions are allowed to stand, the United States can weaponize a national security process to punish and chill political speech protected by the First Amendment. What speech gets punished will depend merely on which political party controls the levers of power. In other words, every conceivable consideration weighs in favor of the Court hearing this case on the merits.

Finally, Mr. Fuentes' counsel did not realize that Attorney Wolman was admitted to the Court's bar until several days before June 15, 2022. It had not been apparent at the time the that petition was untimely. Thus, they did not move sooner for an extension of time. Attorney Atkinson takes

full and sole responsibility for that, and he submits that the timing of this motion is still sufficient.

Mr. Fuentes did file his petition for review late through no fault of his own. He made prodigious efforts to attempt to cure an error of counsel. The late filing is excusable. The Court should hear this case on its merits in accordance with its well-established policy.

## CONCLUSION

Mr. Fuentes respectfully asks the Court to grant his *nunc pro tunc* motion for extension of time until May 13, 2022 and deem his petition filed on May 13, 2022 timely filed.

/s/ Cameron L. Atkinson /s/
Cameron L. Atkinson, Esq.
Pattis & Smith, LLC
383 Orange Street, 1st Floor
New Haven, CT 06511
Tel: 203-393-3017
Fax: 203-393-9745
catkinson@pattisandsmith.com

/s/ Jay M. Wolman /s/
Jay M. Wolman, Esq.
Randazza Legal Group, PLLC
100 Pearl Street, 14th Floor
Hartford, CT 06103
Tel: 702-420-2001
ecf@randazza.com

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), I hereby certify that this response and motion complies with Federal Rule of Appellate Procedure 27(d)(1)(E) because it was prepared with Palatino Linotype, a proportionally spaced font with serifs, and the response and motion complies with D.C. Cir. L.R. 27(c) because it contains 2,985 words, according to the word count feature of Microsoft Word.

<u>/s/ Cameron L. Atkinson /s/</u>

## CERTIFICATE OF SERVICE

I hereby certify that, on July 11, 2022, I filed and served the foregoing

with the Clerk of the Court by causing a copy to be electronically filed via

the appellate CM/ECF system. I also hereby certify that the participants in

the case are registered CM/ECF users and will be served via the CM/ECF

system.

/s/ Cameron L. Atkinson /s/

# Exhibit A



March 11, 2022

Mr. Nicholas Fuentes
929 Newberry Avenue
La Grange Park, IL  60526
United States

Redress Control Number:  2331500

Dear Mr. Fuentes:

Thank you for submitting your Traveler Inquiry Form and identity documentation to the Department of Homeland Security Traveler Redress Inquiry Program (DHS TRIP).  We take requests for redress seriously and strive to process travelers in the most efficient and professional manner possible without compromising our mission to safeguard the United States, its people, and its visitors.

In response to the redress inquiry you submitted to DHS TRIP on April 27, 2021, we have conducted a review of any applicable records, as appropriate.  We have determined that, on January 12, 2021, the Transportation Security Administration (TSA) placed you on TSA's Deny Boarding List because you were identified as an individual who "may be a threat to civil aviation or national security."  49 U.S.C. § 114(h)(3)(A).  In particular, TSA determined that you were an individual who expressed an intent of carrying out or inciting an act that represents an imminent threat to the life of airline crew and your expression of intent appeared, under the circumstances, to be likely to incite or produce such action.  TSA reached this determination based on the totality of available information, including but not limited to videos you posted on or about January 4, 2021, in which you made serious expressions of your intent to harm flight attendants by apparent suffocation and/or shooting on your DLive broadcast "America First."[1]  DLive is a live streaming platform that is accessed by hundreds of thousands of viewers.  True and correct copies of these videos are enclosed as digital attachments.

On November 2, 2021, TSA removed you from TSA's Deny Boarding List.  The decision to remove you from TSA's Deny Boarding List was made based upon TSA's assessment, under the

---

[1] In one video, you reference going into a flight attendant school to "shake everyone's hand."  You stated, "don't come to flight attendant school tomorrow, . . . I'm coming."  "I am going to open the door and everyone is going to [say] AHHHH."  You further stated, "You, you thought you could hide in the stall, I'm going to shake your hand too . . . through the stall door.  You think a stall door is going to stop me from shaking your hand?"  TSA interpreted your statements about shaking hands to refer to shooting individuals.  TSA also considered your comments in which you stated that you were joking.  TSA determined that you warranted placement on TSA's Deny Boarding List in light of the graphic and violent nature of your threats directed toward flight attendants, which contributed to TSA's assessment that you intended to convey a threat by making these statements and were likely to incite or produce such imminent lawless action.

totality of circumstances, of all relevant information available as of November 2, 2021.  TSA will not place you back on TSA's Deny Boarding List based upon the currently available information.[2]

We cannot ensure, however, that your travel will be delay-free.  The redress process does not affect other screening procedures in place at airports and borders.  For example, individual air carriers may deny passengers boarding pursuant to their own authority, and an individual may be selected for additional screening in order to resolve a walk-through metal detector alarm, because of random selection, or other reasons.  While this process may sometimes be stressful, we rely on the patience, cooperation, and understanding of travelers in such cases.  The aim of these security measures is to safeguard the people of the United States and visitors to this Nation.

This letter constitutes TSA's final agency decision.  If you have any further questions, please contact DHS TRIP via e-mail at TRIP@tsa.dhs.gov, or write to the address found in the letterhead.

Sincerely,

Stanley Mungaray
Acting Director
DHS Traveler Redress Inquiry Program

Enclosures

---

[2] TSA has released information to you regarding your prior status on TSA's Deny Boarding List after considering the transportation security, law enforcement, and national security concerns at stake.   This letter does not include Sensitive Security Information, as defined in 49 C.F.R. Part 1520, or other information protected from disclosure by law.

**Exhibit B**

# UNITED STATES COURT OF APPEALS
## for the
## D.C. CIRCUIT

| | | |
|---|---|---|
| NICHOLAS FUENTES, | : | |
| | : | |
| *Petitioner,* | : | No. 22-1082 |
| v. | : | |
| | : | |
| U.S. TRANSPORTATION | : | |
| SECURITY ADMINISTRATION; | : | |
| U.S. DEPARTMENT OF | : | |
| HOMELAND SECURITY; | : | |
| UNITED STATES OF AMERICA | : | |
| | : | |
| *Respondents.* | : | July 11, 2022 |

## DECLARATION OF CAMERON L. ATKINSON, ESQ.

Pursuant to 28 U.S.C. § 1746, I, Cameron L. Atkinson, Esq., being duly sworn, hereby certify as follows

1.    I am over the age of 18 and understand in and believe in the obligations of an oath. I understand that I am making this declaration for use as evidence in the above-captioned case.

2.    I am an associate attorney at the law firm of Pattis & Smith, LLC, located in New Haven, Connecticut and am counsel for Nicholas Fuentes.

3.    Norman A. Pattis, Esq., is a partner at Pattis & Smith, LLC, and assigned me to assist him with our firm's representation of Nicholas Fuentes regarding his placement on a United States government "no fly" list. As such, I have full knowledge of all relevant facts pertaining to the above-captioned matter.

4. After Mr. Fuentes petitioned the Department of Homeland Security (DHS) for administrative review of his placement on a "no fly" list, Attorney Pattis filed an action in the United States District Court for the District of Columbia on behalf of Mr. Fuentes. *See Fuentes v. Biden, et al.*, Dkt. No. 1:21-cv-03106. That action remains pending as of this date.

5. Attorney Pattis had previously litigated matters in Washington, D.C. and communicated to me that he believed that he was admitted to the bar of the United States Court of Appeals for the D.C. Circuit. The basis for Attorney Pattis' belief was that he had previously presented oral argument before a federal appellate court in Washington, D.C., in a similar administrative agency appeal. Thus, Attorney Pattis believed that he would be able to file Mr. Fuentes' administrative appeal without any issues, and I shared his belief.

6. When Mr. Fuentes received the final administrative agency order from the DHS on March 11, 2022, Pattis & Smith, LLC, was in the midst of experiencing significant staff turnover. In March 2022, it lost an attorney, which shifted most of his caseload to me. Additionally, in March/April 2022, it unexpectedly lost its entire support staff (an office manager and a paralegal), which further strained its ability to meet its obligations.

7. As a result of Attorney Pattis's and my additional responsibilities, we did not have time to pursue Mr. Fuentes's administrative appeal until the first week

of May. Having prepared the necessary paperwork, I attempted to use Attorney Pattis's ECF login, at his direction, to file the necessary paperwork. When I could not login, I contacted the Court's clerk's office. After several hours of inquiring with the Clerk's office and in other places, I ascertained for the first time that Attorney Pattis had confused his admission to the Federal Circuit Court of Appeals with the D.C. Circuit.

8.    I immediately informed Attorney Pattis and began searching for local counsel who would be willing to sponsor our admissions *pro hac vice* in either the D.C. Circuit or the Seventh Circuit – the circuit responsible for the region in which Mr. Fuentes lives. Concurrently, I submitted an application for admission to the Seventh Circuit in the hopes that I would be admitted in time to timely file the petition. Attorney Pattis made similar efforts.

9.    I was unsuccessful in those endeavors. In a last-ditch effort to preserve Mr. Fuentes's right to review, I provided him with the necessary appellate documents on May 10, 2022, and instructed him file them *pro se* by overnight mailing them to the D.C. Circuit Court of Appeals' clerk's office, which he did.

10.    Mr. Fuentes reasonably relied on our assurances that we would be able to represent him before the D.C. Circuit Court of Appeals.

I declare under penalty of perjury the foregoing is true and correct.

Executed on July 11, 2022

Cameron L. Atkinson